KH 9/9/20

# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Postal Inspector Kevin Horne, being first duly sworn, hereby depose and state as follows:

1. I am a United States Postal Inspector, assigned to investigate the unlawful transportation of contraband, including Title 21 controlled substances, through the United States Mail. I have been a Postal Inspector since April 2017. As part of my duties, I investigate incidents where the United States mail system is used for the purpose of transporting non-mailable matter, including controlled substances in violation of Title 21, United States Code, Sections 841(a)(1), Possession with Intent to Distribute a Controlled Substance; 843(b), Use of a Communication Facility to Facilitate the Commission of a Federal Drug Felony; 846, Attempt and Conspiracy to Commit a Controlled Substances Offense; and Title 18, United States Code, Section 1716, Injurious Articles Nonmailable (Nonmailable Matter).

    a. I am currently assigned to the Seattle Division, specifically to the Anchorage Domicile, which is responsible for the investigation of controlled substance law violations involving the United States Mails.

    b. I attended and graduated from a three-month Basic Inspector Training (BIT) academy operated by the United States Postal Inspection Service (USPIS). While attending BIT academy, I received training and instruction on the methods for concealing narcotics in the mail system. I currently receive training and instruction under the tutelage and supervision of senior Postal Inspectors.

    c. Prior to my employment with the USPIS, I was employed for eight years by the Federal Air Marshal Service (FAMS) as a Federal Air



Marshal (FAM). While assigned to the FAMS, I served as team leader on domestic and international flight missions. From 2010 to 2011, I was assigned to the Visible Intermodal Prevention and Response Team (VIPR). After my assignment to the VIPR Team I was assigned to the Mission Operation Center where I served as a watch officer from 2016 to 2017.

    d.    I have gained knowledge and insight by working and speaking with many experienced law enforcement agents from local, state, and federal agencies, and I consider this knowledge and insight to be an integral part of my experience and training.

    e.    In May 2008 I received a bachelor's degree in Criminal Justice from Virginia Wesleyan College in Virginia Beach, Virginia. The information contained below is from my personal knowledge and experience, other law enforcement personnel, or from those specific sources set forth herein.

2. This investigation concerns allegations of violations and attempted violations of Title 21, U.S. Code (U.S.C.), Section 846, "Conspiracy to Distribute a Controlled Substance;" Title 21 U.S.C. Section 841, "Distribution of a Controlled Substance; " Title 21 U.S.C. Section 843(b) "Use of a communication facility in furtherance of a felony drug offense," 18 U.S.C. § 1956, " Laundering of monetary instruments" by Bria Hayes, Moises Martin-Lara, and Kenyon Jackson and others unknown to law enforcement.

PROPERTY TO BE SEARCHED

3. This affidavit is made in support of an application for a warrant to search **5511 Windflower #A Anchorage, Alaska 99507, Blue Nissan Juke LDC-466, and White Audi Q 5 – LDP-999.** (see Attachment A, attached hereto and incorporated herein by this reference). The purpose of the requested warrant is



to search for evidence of violations of Title 21, United States Code (U.S.C.), Sections 846,841, 843(b), and Tile 18 U.S.C., Section 1956.

4. Since this affidavit is being submitted for the limited purpose of securing warrant(s) to search and seize evidence, fruits or instrumentalities of violations of Title 21, United States Code (U.S.C.), Sections 846,841, 843(b), and Tile 18 U.S.C., Section 1956, from the aforementioned property, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish a foundation for the requested search warrant(s).

## ITEMS TO BE SEIZED

5. All items, records, and information that are evidence, fruits, or instrumentalities of violations of Title 21, United States Code (U.S.C.), Sections 846,841, 843(b), and Tile 18 U.S.C., Section 1956 involving Bria Hayes, Moises Martin-Lara, and Kenyon Jackson and others unknown to law enforcement, and others, including:

   a. Heroin, Fentanyl ,Methamphetamine, Oxycontin, drug paraphernalia including but not limited to spoons, straws, hypodermic needles, strainers, tooters, mirrors, razor blades, vials, grinders, propane torches, glass pipes, and other pipes used to smoke methamphetamine, and stash containers.

   b. United States currency, foreign currency, precious metals, jewelry, stocks, bonds, money orders, certificates of deposit and cashier's checks.

   c. All records, receipts, and other items evidencing the obtainment, secreting, transfer, concealment or expenditure of proceeds acquired through trafficking in controlled substances, including all items evidencing the expenditure of drug related proceeds, namely;



9/9/20

       receipts, purchase agreements, vehicle titles, warranty applications, homeowners' or renters insurance applications and claims, photographs and/or video recordings of luxury items, jewelry, expensive vacations;

d. Account statements, account summaries, credit card statements, banking deposit slips, handwritten notes containing account information, account holder and/or amount deposited, money market accounts, overseas banking information to include routing codes, deposit receipts, canceled checks, loan agreements and loan applications.

e. Safe deposit box keys and agreements and commercial storage locker keys or records.

f. Wire transfer documents, receipts and handwritten notes containing wire service tracking numbers, amounts sent and intended pay-out locations.

g. Cellular telephones, caller ID units, fax machines, pagers, pre-paid long-distance cards, telephone answering machine tapes, computers, electronic storage medium, (Such as cellular telephone flash memory), removable memory storage. (Computers and electronic storage medium will not be searched without obtaining an independent search warrant following seizure).

h. Printed flight itineraries, passports including visas, airline tickets, airline ticket receipts, pre-printed airline luggage tags, handwritten notes containing airline confirmation codes, frequent flyer mileage plan cards and summaries, business cards from other areas, hotel receipts and car rental agreements and receipts.



i. Items tending to establish the identity of the persons in control, including all records, receipts, and other items evidencing who controlled the property identified in Attachment A.

j. Items tending to establish and document sales of controlled substance and/or other controlled substances, or conspiracy to manufacture, distribute, and/or possess with the intent to distribute controlled substances and/or controlled substances, namely; buyer lists, seller lists, ledgers, tally sheets, pay and owe sheets, price lists, notes and diaries.

k. Items tending to establish the identity of co-conspirators, namely; address books, papers and documents bearing handwritten or typed notations of names, aliases and associated telephone numbers, photographs and videotapes.

l. Drug distribution paraphernalia, namely; scales, baggies, duct tape, vacuum sealers and vacuum sealer bags, drug ledgers, pay-owe sheets, customer lists, price lists and code sheets.

m. Weapons used, carried or intended to be used or carried during and in relation to any drug trafficking crime; to include pistols, revolvers, rifles, shotguns and machine guns. The seizure of the weapons will be predicated on the criteria including placement, concealment, ownership status and whether or not the weapon is loaded.

n. Photographs, video or audio recordings of the aforementioned individual and other drug associates, controlled substances, or assets obtained from the proceeds acquired through trafficking in controlled substances.

o. Closed circuit television cameras and associated Digital Video Recording devices.

Page 5 of 20

Case 3:20-mj-00451-MMS   Document 1-1   Filed 09/09/20   Page 5 of 14



  p. Gloves utilized during the opening of the Subject Parcel

6. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as cellular telephone flash memory), removable memory storage, and any photographic form.

TRAINING AND EXPERIENCE

7. Based upon my training and experience, and communication with other Law Enforcement agents I know:

  a. That it is common for persons involved in drug trafficking to acquire large amounts of U.S. currency from their involvement in the drug trade, and to maintain large amounts of U.S. currency on hand, in order to maintain and finance their ongoing illegal activities, as well as, paying bills, acquiring assets and making other purchases;

  b. That it is common for persons involved in drug trafficking to maintain U.S. currency within their residences, buried on their property, hidden in vehicles and outbuildings, to conceal this U.S. currency from law enforcement authorities;

  c. That it is common for persons involved in drug trafficking to maintain records evidencing their illegal activities, including books, receipts, notes, ledgers, airline tickets, money orders, safe deposit box keys, and other papers relating to the transportation, ordering, possession, sale and distribution of drugs. The aforementioned books, receipts, notes, ledgers, etc., are frequently maintained at the suspect's residence or business or other property, in either paper or electronic form, or both. When such records are maintained in electronic form, it is common for them to be stored on stand-alone or

Page 6 of 20

Case 3:20-mj-00451-MMS Document 1-1 Filed 09/09/20 Page 6 of 14



> networked computers, "laptop" computers, "palm-sized" personal data assistants, cellular telephones, other computer peripherals or electronic data storage devices; that it is common for persons involved in drug trafficking to maintain addresses or telephone numbers in books, cellular telephones, pagers, electronic data storage devices such as computers and personal data assistants/organizers, or on papers, which reflect the names, addresses and/or telephone numbers of their associates in the drug trafficking organization (DTO);

d. That it is common for persons involved in drug trafficking to attempt to legitimize their profits from the sale of drugs. To accomplish this goal, drug traffickers utilize foreign and domestic banks and their attendant services (especially cashier's checks, money orders/drafts, electronic funds transfers/wires, and safe deposit boxes), as well as, real estate and business transactions, both real and fictitious.that it is common for persons involved in drug trafficking to cause photographs and videos of themselves, their associates, their property and their products to be taken or create

e. That it is common for persons involved in the business of drug trafficking to report false names, addresses, telephone numbers and other information to government and law enforcement personnel and agencies, in an attempt to conceal their identity, address and contact information, as well as, the actual use, possession or ownership of significant assets or equipment such as vehicles, aircraft, boats, real estate, rental units, storage facilities, bank accounts, computers, communication devices and other assets or equipment used in or derived from their illegal drug trafficking activities;



f.  That it is common for persons involved in the business of drug trafficking to communicate to co-conspirators utilizing electronic means, including text messaging, instant messaging, emails, and telephone calls;

g.  That it is common for persons involved in the business of drug trafficking to utilize computers and cellular telephones to search internet package tracking websites (i.e. www.usps.com, www.fedex.com, www.ups.com, www.aml.com, etc...) to determine the location of drug shipments;

h.  That it is common for persons involved in the business of drug trafficking to utilize computers and cellular telephones to search internet money service business and financial institution websites (i.e. www.westernunion.com, etc...) to determine the status of money transfers and track bank account information; and

i.  That it is common for persons involved in the business of drug trafficking to retain the aforementioned records and items related to their drug trafficking activities and associates for long periods of time, even after their drug trafficking and money laundering activities have terminated.

j.  That it is common for persons involved in the business of drug trafficking to utilize firearms to protect themselves and their illegitimate business.   Due to the illegitimate nature of drug trafficking, persons involved in this type of business will not utilize law enforcement or the court system to resolve disputes with customers or other drug traffickers.   The lack of the use of law enforcement or the court system often causes persons involved in drug trafficking to enforce the law on their own, often through the use of firearms and other weapons.



k. That it is common for persons involved in the business of drug trafficking to install closed circuit television cameras and associated recording devices in order to provide identification of persons outside of the residence being utilized for drug trafficking and to provide the ability to avoid law enforcement action.

PROBABLE CAUSE

8. The United States, including the Drug Enforcement Administration and Postal Inspection Service, are conducting a criminal investigation of a Bria Hayes, Moises Martin-Lara, and Kenyon Jackson and others unknown to law enforcement regarding possible violations of Title 18, United States Code, Section 1956 (money laundering), Title 21, United States Code, Sections 841(a)(1) (distribution and possession of controlled substance with intent to distribute) and 846 (conspiracy in relation to drug distribution).

9. On September 5, 2020, I identified **Priority Mail Express Parcel EJ161963924 address to "Tim Smith 6600 Weimer dr apt 6 anchorage Alaska 99502" from "Abel Flores 626 W. Calle Santa Maria Tucson AZ 85706" (hereinafter "Subject Parcel** as suspicious.

10. September 8, 2020, at approximately 4:15 PM, Federal Search Warrant 03:20-MJ-00447-MMS was applied for and granted by a United States Magistrate Judge for the Subject Parcel.



11. On September 8, 2020 at approximately 4:35 PM, Federal Search Warrant 03:20-MJ-00447-MMS was executed on the Subject Parcel. The Subject Parcel was found to contain one (1) pound five (5) ounces (approx. 4,000) of light blue M/30 pills suspected to be fentanyl. The light blue M/30 pills were located inside a heat sealed bag, placed inside the Subject Parcel. Based on my training and experience, and the training and experience of other law enforcement officers I have spoken with, these suspected counterfeit M/30 pills street value in Anchorage Alaska is $80,000.

12. As a result of the seizure on September 8, 2020, Beeper Order Number 3:20-MJ-00450-MMS was obtained from a United States Magistrate Judge authorizing the installation and monitoring of an electronic alerting device and electronic tracking device in the Subject Parcel and recovery of these devices by entry of premises where the parcel is opened.

13. Law enforcement officers removed the original narcotics and inserted a sham product into the parcel along with two tracking and monitoring devices. One monitoring device was placed so it would emit a break-tone signal upon opening of the interior box of the parcel. In addition one GPS tracking device had was placed inside of the sham inside the Subject Parcel.

14. At approximately 12:00 PM on September 9, 2020, Postal Inspectors delivered the subject parcel to the recipient's address, "6600 Weimer dr apt 6 anchorage

Alaska 99502." Inspector Alex Laumb delivered the Subject Parcel to a female later identify as Adera Leonard.

15. Surveillance teams set up around "6600 Weimer dr apt 6 anchorage Alaska 99502" and monitored the GPS tracking and the two monitoring devices. Surveillance teams witness a Leonard exit the residence with a small purse and head toward a Silver Toyota License Plate GWD-929. Based on my training and experience, and the training and experience of other law enforcement officers the small purse could contain the parcel. Silver Toyota License Plate GWD-929 is register to Adera Leonard. Surveillance teams witness Leonard leave the residence of "6600 Weimer dr Anchorage Alaska 99502."

16. At approximately 1:32 pm, surveillance teams watched Leonard drive and parked her vehicle at "5511 Windflower Anchorage Alaska." This address was later identified as Bria Hayes residence. Leonard exited her vehicle with a small purse and walked inside of "5511 Windflower Unit A Anchorage Alaska."

17. Surveillance team set up around "5511 Windflower Unit A Anchorage Alaska." At approximately 1:35 PM surveillance teams witness a White Ford fusion license Plate LDJ-566 approach the residence of "5511 Windflower Unit A Anchorage Alaska." A white male wearing all black exited the white fusion and approached the residence. The white male exited the residence and

head back towards the white Ford fusion. White Ford Fusion License Plate LDJ-566 is registered to Kendra Ivory.

18. At approximately 1:42 PM, Troopers and agents heard the electronic monitoring device emitting the break-tone, indicating that the Subject Parcel had already been opened.

19. While executing the beeper order, the content of the Subject Parcel which contained sham narcotics and GPS tracking device was found outside the White Ford fusion license plate LDJ-566. Two subjects were detained. Subjects were later identify as Kenyon Jackson and Moises Martin-Lara.

20. While conducting a safety sweep of the residences of "5511 Windflower Unit A Anchorage Alaska", Troopers and Agents located the exterior of the Subject Parcel open. In plain view agents observed 198US Currency, additional postal parcels, and a money counter inside the residence.

21. During a Miranda interview with Moises Martin-Lara, Moises stated he lived at "5511 Windflower Unit A Anchorage Alaska." Also Moises stated there was 5 gross grams of Heroin located at the residences address of "5511 Windflower Unit A Anchorage Alaska."

22. Located inside the garage at the residences address of "5511 Windflower Unit A Anchorage Alaska" is a blue Nissan Juke- LDC-466 register to Reginald Hayes and Aneta Hayes. Additional to the Nissan there was a White Audi Q 5

– LDP-999 registered to Kenyon Jackson was located in the driveway. Outside the Audi in plain view agents observed money orders.

CONCLUSION

23. It is the affiant's belief, based upon the facts contained herein and previous training and experience, that Bria Hayes, Moises Martin-Lara, and Kenyon Jackson and others unknown to law enforcement are conducting activity that is consistent with violations of Title 21, United States Code (U.S.C.), Sections 846,841, 843(b), and Tile 18 U.S.C., Section 1956.

24. Therefore, it is the affiant's belief, based upon the facts contained herein and previous training and experience, that there is probable cause to believe that evidence, fruits or instrumentalities (see Attachment B, attached hereto and incorporated herein by this reference) of violations of Title 21, United States Code (U.S.C.), Sections 846,841, 843(b), and Tile 18 U.S.C., Section 1956 are currently concealed within**, 5511 Windflower #A Anchorage, Alaska 99507, Blue Nissan Juke LDC-466, and White Audi Q 5 – LDP-999.**

Kevin Horne
United States Postal Inspector
United States Postal Inspection Service

SUBSCRIBED AND SWORN TO BEFORE ME this __9th__ day of ~~June~~ September 2020, at Anchorage, Alaska.



_____
U.S. Magistrate Judge